Filed 7/12/21  P. v. Miller CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C092695 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-98243) |
| v. | |
| BRAD ROBERT MILLER, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Brad Robert Miller filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After considering defendant's supplemental brief, which raises issues that could have been raised in his initial appeal, we affirm.

1

## BACKGROUND

*Jury Trial*

In June 2012, a jury found defendant guilty of the first degree murder of Eric McGhee (Pen. Code, § 187, subd. (a)),[1] and being a felon in possession of a firearm (former § 12021, subd. (c)(1)).  The jury also found true that defendant personally discharged a firearm causing death (§ 12022.53, subd. (d)).  He was sentenced to three years in state prison plus an indeterminate term of 50 years to life.  We affirmed the judgment after finding any error in admitting evidence of the victim's state of mind during trial harmless.  (See *People v. Miller* (Aug. 21, 2014, C071677) [nonpub. opn.] (*Miller*).)  As recounted in *Miller*, the evidence at trial showed the following:

In 2010, defendant moved in with McGhee, his longtime friend.  One day, McGhee found defendant drunk and with a gun in his mouth.  After taking the gun away, he transported defendant to the hospital to detox because he had been drinking too much. Defendant continued to drink to excess after his hospital stay.  During one drunken episode, defendant threatened to kill everyone, scaring McGhee's son who was present. Following that incident, McGhee told several people that he planned on kicking defendant out of the house.

On the morning of April 15, 2010, McGhee used his cell phone for the last time from a location at or near his house.  Shortly thereafter, McGhee's neighbors heard two loud gun shots from his home.  Although friends and family members called and sent McGhee numerous text messages after the last time he used his phone, none were answered, and he failed to show up at a business meeting on April 17 in Los Angeles. Evidence showed defendant last called McGhee on the morning of the day he disappeared, April 15; he did not call McGhee again after 7:58 a.m. on that day.

---

[1]  Further undesignated statutory references are to the Penal Code.

Defendant later responded to a message from McGhee's worried daughter on April 17 inquiring about his whereabouts. Defendant told her that McGhee had gone to Los Angeles and that he had not heard from him. Defendant did not mention he was in possession of McGhee's phone when she said she thought her father had lost his phone. Later that day, defendant was arrested for driving under the influence in McGhee's car. Defendant had McGhee's cell phone with him.

The following day, April 18, McGhee's former wife and several family members went to his house. After discovering pieces of his kitchen table broken in the backyard, his teenaged daughter crawled through a pet door and unlocked the house. The house was completely dark because most of the window coverings were closed and smelled like rust. They discovered McGhee's broken glasses and wallet in the kitchen. They called police.

Officers responded to the scene to conduct a welfare check and discovered McGhee dead in a closet with three gunshot wounds to the head, wrapped in a blanket with blood on it. Upon further investigation, it was determined there was no forced entry into the home and that the perpetrator was most probably a resident well known to McGhee. Evidence collected inside the home showed a significant cleanup effort, and officers discovered defendant's set of keys, an unexpended .380-caliber bullet, and bloody clothing consistent with defendant's size in the washing machine. A swab of blood found on defendant's right foot tested positive for McGhee's DNA.

One of defendant's keys opened a gun safe in McGhee's bedroom that contained defendant's .380-caliber Bersa semiautomatic handgun. A criminalist testified that two of the bullets removed from McGhee's body were fired by defendant's .380-caliber gun, and a damaged third bullet could have been fired by defendant's gun. Stains and smudges on an ammunition box and padlock tested presumptively positive for blood. Defendant's personal items were found packed up near the top of the stairs next to a bathroom where a number of visible signs of blood were present.

3

Given the condition of the body, it was difficult to determine a precise time of death. The pathologist believed the best indication of when McGhee died was close to the time when he was last heard from on April 15.

As part of his job, McGhee hired and fired employees at his company, and collected their work badges after letting employees go. Police found the identification badges of four former employees at McGhee's house. After further investigation, police determined that none had been inside McGhee's home and none were involved in his murder.

During a police interview, defendant said he had been drinking heavily and that he kind of remembered that McGhee had four friends or employees over, and that they helped defendant clean up the broken kitchen table. When he looked around, he did not see McGhee, which he thought was strange because his cell phone and car were still at the house.

Three experts testified on defendant's behalf. A DNA expert testified that it was not unusual for one housemate to transfer DNA to another housemate. An expert in homicide investigations testified that the investigation into McGhee's death had been poorly conducted. In his opinion, the crime scene had not been properly checked for fingerprints and the ambient environment and temperature of the victim were not collected. An expert pathologist estimated that defendant died approximately 24 hours before his body was discovered on April 18. One of McGhee's neighbors also testified that he did not hear any gunshots on the morning of April 15.

**Petition for Resentencing Under Section 1170.95**

In August 2020, defendant filed a petition under Senate Bill No. 1437 (2017-2018 Reg. Sess.) and section 1170.95 to have his murder conviction vacated and to be resentenced. He requested the appointment of counsel. His petition asserted that he could not now be convicted of first degree murder given Senate Bill No. 1437's changes to sections 188 and 189, and that his firearm enhancement did not preclude him from

4

relief.  In an attached declaration, defendant declared that the prosecution had tried the case on the theories of felony murder or murder under the natural and probable consequences doctrine.

The trial court summarily denied the petition without appointing counsel or requesting briefing from the parties, finding defendant had failed to establish a prima facie case for relief under section 1170.95 because he was not convicted of first degree murder based on either felony murder or the natural and probable consequences doctrine. The court noted that the jury was not instructed on principles related to either theory, and was instead required to find that defendant acted with a specific intent to kill under CALCRIM No. 520 with which the jury was instructed.  Defendant timely appealed.

## DISCUSSION

We appointed counsel to represent defendant on appeal.  Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende, supra*, 25 Cal.3d 436.)  Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief challenging whether substantial evidence supported his convictions.[2]  He disagrees with the prosecution and defense's theories of the case, and argues that the four men he remembered being at the house were not properly investigated.  According to defendant, the record showed he was not in his normal mental state leading up to the murder, and he contends he did not harbor any malice toward McGhee or wish him dead.

---

[2]  Because defendant filed a supplemental opening brief raising several issues, we do not address appointed counsel's request to conduct an independent review of the record even if defendant was not technically entitled to *Wende* review in this postconviction proceeding because it does not constitute a first appeal of right in defendant's case.

5

To the extent defendant is raising evidentiary challenges, these challenges are waived. (*People v. Jordan* (2018) 21 Cal.App.5th 1136, 1143 [the doctrine of waiver precludes successive appeals based on issues ripe for consideration in the prior appeal and not brought in that proceeding]; *People v. Senior* (1995) 33 Cal.App.4th 531, 538 ["where a criminal defendant could have raised an issue in a prior appeal, the appellate court need not entertain the issue in a subsequent appeal absent a showing of justification for the delay"].) The time to appeal such evidentiary issues has long since passed, and because he did not raise them in his initial appeal (*Miller, supra*, C071677), he is precluded from belatedly doing so now.

Furthermore, we reject defendant's claim that he lacked malice during the killing. The jury found otherwise in finding defendant guilty of first degree murder. (§ 187, subd. (a) ["Murder is the unlawful killing of a human being, or a fetus, with malice aforethought."].)

## DISPOSITION

The order summarily denying defendant's section 1170.95 petition is affirmed.


  /s/
HOCH, J.


We concur:


  /s/
MAURO, Acting P. J.


  /s/
RENNER, J.

6